IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADAM ROSEN** | : | CIVIL ACTION |
| *Petitioner* | : | |
| | : | NO. 15-4539 |
| v. | : | |
| | : | |
| **JOHN KERESTES**, *et al.* | : | |
| *Respondents* | : | |

# O R D E R

**AND NOW**, this 22nd day of August 2018, upon consideration of the pleadings and record herein, including, *inter alia*, the petition for writ of *habeas corpus* filed by Petitioner Adam Rosen ("Petitioner") pursuant to 28 U.S.C. § 2254 (the "Petition"), [ECF 1], Petitioner's memorandum of law in support thereof, [ECF 9], the response to the Petition filed by Respondents, [ECF 24], the state court record; the *Report and Recommendation* (the "R&R") issued by the Honorable David R. Strawbridge, United States Magistrate Judge ("the Magistrate Judge"), [ECF 26], recommending that the Petition be denied; and Petitioner's objections to the R&R, [ECF 31], and after conducting a *de novo* review of the objections, it is hereby **ORDERED** that:

1.  The *Report and Recommendation* (the "R&R") is **APPROVED** and **ADOPTED**;

2.  The objections to the R&R are without merit and are **OVERRULED**;[1]

---

[1] In his Petition, Petitioner asserts two claims; *to wit*; that the trial court essentially violated his Fifth Amendment rights when it denied Petitioner's motion *in limine* with respect to statements he made to psychiatrists before his first trial; and that trial counsel provided ineffective assistance at his second trial by failing to adequately respond to the testimony of one of the Commonwealth's experts with respect to the injuries of his wife, the victim of the murder of which he was convicted. In his objections to the R&R, Petitioner disagrees with the Magistrate Judge's findings and reiterates his claims and arguments in support thereof. Petitioner's objections, however, are nothing more than an attempt to re-litigate the various arguments raised in his petition and memorandum of law in support. He essentially argues that the Magistrate Judge "sidestep[ped] the constitutional issue presented" in his first claim and "put[] on blinders" in the analysis of Petitioner's second claim. This Court disagrees and finds that the Magistrate Judge thoroughly reviewed each of Petitioner's arguments in the twenty-six page R&R and correctly concluded that Petitioner's claims were without merit. This Court has further reviewed the pertinent portions of the record *de novo* and finds that no error was committed by the Magistrate Judge in the analysis of Petitioner's claims. Accordingly, the R&R is adopted and approved in its entirety, and Petitioner's objections are overruled. Notwithstanding this Court's adoption of the R&R, further analysis is provided with respect to Plaintiff's first *habeas* claim to address Petitioner's contention

that the Magistrate Judge failed to adequately address the Supreme Court precedents on which Petitioner relied in his underlying petition.

As laid out in the R&R, the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standards for reviewing state court judgments raised in federal *habeas corpus* petitions filed under 28 U.S.C. § 2254. *Werts v. Vaughn*, 228 F.3d 178, 195 (3d Cir. 2000). AEDPA increased the deference federal courts must give to the legal determinations and factual findings of the state courts. *Id*. at 196. In accordance with § 2254(d), a *habeas corpus* petition may only be granted if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

To establish that the state court decision was "contrary to" federal law, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir. 1999). The state court judgment must not merely be contrary to law as articulated by *any* federal court; rather "[i]t must contradict 'clearly established' decisions of the United States Supreme Court alone." *Fischetti v. Johnson*, 384 F.3d 140, 147 (3d Cir. 2004) (citations omitted). In determining what is "clearly established," Supreme Court decisions cannot be viewed "at a broad level of generality," but instead must be viewed on a "case-specific level." *Id*. at 148. Further, the "clearly established Federal law" provision requires Supreme Court decisions to be viewed through a "sharply focused lens." *Id*. at 149; *see also Yarborough v. Alvarado*, 541 U.S. 652, 666-67 (2004) (observing that "if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision."). Providing further clarity on this deferential standard, the Supreme Court reiterated that:

> [a] state court decision is "contrary to" our clearly established precedents if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."

*Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Similarly, in *Carey v. Musladin*, 549 U.S. 70 (2006), the Supreme Court elaborated on the meaning of "clearly established federal law," holding that the lack of a Supreme Court holding on a specific issue precludes a finding that a state court decision on that issue was contrary to or an unreasonable application of clearly established federal law. *Id.* at 77. Under this heightened standard, therefore, it is Petitioner's burden to show that the Pennsylvania Supreme Court unreasonably applied a clearly-established constitutional principle as set forth by the United States Supreme Court when the state court upheld Petitioner's conviction.

As the underpinnings of his first claim, Petitioner contends that the state court "unquestionably violated Mr. Rosen's rights under the Fifth Amendment," and that the state court decision "was contrary to and involved an unreasonable application of clearly established Federal Law, as determined by the Supreme Court of the United States in *Estelle v. Smith*, 451 U.S. 454 (1981)." [ECF 9 at pp. 33, 38]. As correctly concluded by the Magistrate Judge, however, Petitioner has not identified a single United States Supreme Court decision that directly supports his claim. Instead, Petitioner relies on snippets from several Supreme Court cases and a Third Circuit case, in an attempt to extrapolate "clearly established Federal law" from general principles and materially distinguishable holdings of the Supreme Court. Specifically, in his objections (and in his Petition), Petitioner relies upon the following cases: *Estelle v. Smith*, 451 U.S. 454 (1981); *Buchanan v. Kentucky*, 483 U.S. 402 (1987); *Kansas v. Cheever*, 571 U.S. 87 (2013); and *Gibbs v. Frank*, 387 F.3d 268 (3d Cir. 2004).

None of these cases, however, provides "clearly established Federal law" that was unreasonably applied by the state courts in this matter.

In his objections to the R&R, with respect to his first *habeas* claim, Petitioner essentially contends that the Magistrate Judge's recommendation was erroneous in that it "barely mention[ed]" *Estelle* and "ignor[ed]" *Cheever* and *Gibbs*. [ECF 31 at p. 1]. Petitioner then goes on to argue (actually reargue) that the state court decision was contrary to and involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court in *Estelle*. [*Id.* at p. 14]. As correctly found by the Magistrate Judge, Plaintiff's objection and argument in this regard is misplaced.

In *Estelle*, the Supreme Court held that:

> [a] criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him.

451 U.S. at 468. In that case, a judge had ordered a psychiatric examination to determine the defendant's competency to stand trial. *Id.* at 456-57. The prosecution then used statements from that examination during the sentencing phase of the trial as evidence of the defendant's future dangerousness. *Id.* at 458-60. Emphasizing that the defendant had neither "introduced" any "psychiatric evidence," nor even "indicated that he might do so," the Supreme Court concluded that the Fifth Amendment precluded the state from using the defendant's statements in this manner. *Id.* at 466. Central to the Court's holding, however, was the involuntariness of the defendant's statements to the court-appointed psychiatrist and the absence of *Miranda* warnings. *Id.* at 468.

> Because respondent did not voluntarily consent to the pretrial psychiatric examination after being informed of his right to remain silent and the possible use of his statements, the State could not rely on what he said to Dr. Grigson to establish his future dangerousness . . . 'Volunteered statements . . . are not barred by the Fifth Amendment,' but under *Miranda v. Arizona*, we must conclude that, when faced while in custody with a court-ordered psychiatric inquiry, respondent's statements to Dr. Grigson were not 'given freely and voluntarily without any compelling influences' and, as such, could be used as the State did at the penalty phone only if respondent had been apprised of his rights and had knowingly decided to waive them. These safeguards of the Fifth Amendment privilege were not afforded respondent and, thus, his death sentence cannot stand.

*Id.* at 469-70 (citations omitted). By the Supreme Court's express language, its holding in *Estelle* was limited to the "distinct circumstances" presented there – a situation where the trial judge *sua sponte* ordered the psychiatric examination, even though the defendant neither asserted an insanity defense nor offered psychiatric evidence at trial, and did not voluntarily give statements to the court-appointed psychiatrist. *Id.* at 466. The Supreme Court has subsequently noted that it has "never extended *Estelle*'s Fifth Amendment holding beyond its particular facts." *Penry v. Johnson*, 532 U.S. 782, 794-95 (2001).

While Petitioner is correct as to the Supreme Court's holding in *Estelle*, that holding does not apply to or assess the situation in this case. Rather, *Estelle* was based on materially distinguishable facts. In particular, here, unlike in *Estelle*, Petitioner voluntarily asserted a mental health defense prior to and during his first trial while represented by counsel. Having voluntarily raised this defense, he was required to submit to an evaluation by the Commonwealth's own psychiatrist, Dr. Michals. Petitioner's evaluation by and statements to Dr. Michals cannot be deemed involuntary, coerced, or compelled since he voluntarily raised the mental health defense and subsequently presented his own evidence at his first trial in support of the mental health defense. In addition,

the record shows that Petitioner's trial counsel, Mr. Emmett Fitzpatrick, was present when Petitioner was evaluated by Dr. Michals. [*See* ECF 12-102, Trial Transcript at 137:6-9]. In light of these undisputed facts, this case does not comprise of facts that are "materially indistinguishable" from those presented in *Estelle*. As such, for purposes of the instant *habeas* petition, *Estelle* does not constitute clearly established Federal precedent. Therefore, the state court's decision here cannot be said to have been contrary to clearly established federal precedent in regard to the *Estelle* holding. *See Taylor*, 529 U.S. at 406 (noting that a state court decision will be contrary to clearly established Federal precedent only "if the state court confronts a set of facts that are materially indistinguishable from a decision of this [c]ourt and nevertheless arrives at a result different from our precedent."). By the same token, the state court's decision cannot be said to have been objectively unreasonable. *Cf. Penry*, 532 U.S. at 794-95 (noting that *Estelle*'s holding was limited to the "distinct circumstances" presented there and finding the difference between its case and *Estelle* "substantial;" thus, it was not "objectively unreasonable for the Texas court to conclude that [defendant] is not entitled to relief on his Fifth Amendment claim.").

Petitioner's reliance on the Supreme Court's decision in *Buchanan v. Kentucky*, 483 U.S. 402 (1987) is equally unavailing. In *Buchanan*, the Supreme Court held that the prosecution's introduction of a psychological report for rebuttal purposes did not constitute a Fifth Amendment violation where the accused asserted an insanity defense and, thus, placed his mental health in issue. *Id*. at 421-24. The Supreme Court cited to *Estelle*'s admonition against compelling an accused, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, to respond to a psychiatrist if his statements could be used against him at a capital sentencing proceeding, and then noted that the statement "logically leads to another proposition: if a defendant requests such an evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested." *Id.* at 422-23; *see also Kansas v. Cheever*, 571 U.S. 87, 94 (2013) (finding that in *Buchanan*, the Supreme Court held "that where a defense expert who has examined the defendant testifies that the defendant lacked the requisite mental state to commit an offense, the prosecution may present psychiatric evidence in rebuttal.").

As conceded by Petitioner, in *Buchanan*, the Supreme Court held that if a defendant presents a mental-status defense supported by the testimony of a mental health expert, the court may compel the defendant to undergo an examination by a prosecution expert. Here, Petitioner was only required to undergo an examination by a prosecution expert *after* he asserted a mental health defense supported by the testimony of his own mental health expert. As such, the holding in *Buchanan* was not violated here.

Most importantly to Petitioner's underlying *habeas* claim in this case, *Buchanan* does not address the issue presented here: whether the Fifth Amendment waiver continues to apply when a defendant asserts a mental health defense in a first trial, but then withdraws it for a second trial. Indeed, Petitioner conceded as much in his brief to the Pennsylvania Supreme Court, noting that "neither *Buchanan* nor *Sartin* discussed the problem of whether the limited waiver of the privilege, a compelled waiver that in effect placed a price on presenting a mental health defense, applied when mental health was no longer an issue." (*See* Brief for Appellant, 2010 WL 7505903 at *17). Thus, because the *Buchanan* holding does not address the precise issue raised here, it cannot be deemed clearly established Federal law for purposes of Petitioner's *habeas* petition. Necessarily, then, the state court's conclusion in this case cannot be deemed contrary to clearly established Federal law. *See Musladin*, 549 U.S. at 77 (holding that "[g]iven the lack of holdings from this Court regarding [the current issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); *Early*, 537 U.S. at 8 (noting that "contrary to" means a state court's arrival at a conclusion opposite to one reached by the Supreme Court on a question of law or facts materially indistinguishable from those of a relevant Supreme Court precedent); *Taylor*, 529 U.S. at 406 (noting that a state court decision will be contrary to clearly established Federal precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.").

4

Petitioner's reliance on the Supreme Court's decision in *Kansas v. Cheever,* 571 U.S. 87 (2013) is also misplaced. In *Cheever*, the defendant in a homicide case filed a notice of intent to introduce expert testimony relating to his purported intoxication, which would negate the requisite specific intent. *Id*. at 90. Pursuant to Federal Rule of Criminal Procedure 12.2(b), the trial court ordered the defendant to submit to a psychiatric evaluation. *Id*. at 91. The federal trial was subsequently suspended and then dismissed without prejudice, and a second federal prosecution never occurred. *Id*. State prosecutors then brought equivalent state charges against the defendant. *Id*. At the state trial, the defendant presented a voluntary-intoxication defense. *Id*. In support, the defendant offered testimony of a specialist in psychiatric pharmacy. *Id*. After the defense rested, the state presented the testimony of the expert who had examined the defendant pursuant to the federal court order. *Id*. The defendant was convicted. *Id*. at 92.

On appeal, the defendant challenged the admission of the testimony of the state's expert on the grounds that it violated the Fifth Amendment's prohibition against compelled testimony. *Id*. The Supreme Court rejected the defendant's argument, finding that where a defense expert who examined the defendant in a homicide prosecution testified that the defendant lacked the mental state to commit an offense, the prosecution was permitted to present psychiatric evidence in rebuttal. *Id*. at 94. Relying on *Estelle* and *Buchanan*, the Supreme Court held that the Fifth Amendment does not prohibit the prosecution from introducing a court-ordered mental evaluation of a criminal defendant to rebut that defendant's presentation of expert testimony in support of a defense of voluntary intoxication. *Id*. at 93-94. The *Cheever* Court merely reaffirmed its decisions in *Estelle* and *Buchanan*:

> We hold that where a defense expert who has examined the defendant testifies that the defendant lacked the requisite mental state to commit a crime, the prosecution may offer evidence from a court-ordered psychological examination for the limited purpose of rebutting the defendant's evidence.

*Id*. at 98.

The Supreme Court's decision in *Cheever*, like the others discussed above and proffered by Petitioner, does not constitute clearly established Federal law to which the state courts in Petitioner's underlying state court appeals rendered a "contrary" decision, but rather is premised on "materially distinguishable" facts. Here, the prosecution did not use a court-ordered psychological examination for any purpose in Petitioner's second trial. In fact, when ruling on Petitioner's motion *in limine* with respect to the potential use of the evidence, the trial court ruled that the prosecution could not use the evidence in its case-in-chief, but could only use it to impeach Petitioner in the event Petitioner took the stand. As such, *Cheever*, like *Buchanan* and *Estelle*, does not apply. Moreover, *Cheever*, like the other offered Supreme Court cases, does not discuss or address the precise issue presented here: whether a Fifth Amendment waiver continues to apply when a defendant decides in a second trial to not offer evidence of a mental defense. Thus, the state court's decision in this case is not opposite to or contrary to the one reached by the Supreme Court in *Cheever* on a question of law or on facts materially indistinguishable from that case. As such, the state court's decision in Petitioner's case cannot be said to have been contrary to clearly established Federal law, nor can it be an unreasonable application of clearly established Federal law. *See Musladin*, 549 U.S. at 77; *Early*, 537 U.S. at 8; *Taylor,* 529 U.S. at 406.

Though procedurally similar to this case, the United States Court of Appeals for the Third Circuit's decision in *Gibbs v. Frank*, 387 F.3d 268 (3d Cir. 2004) also provides Petitioner no support. As an initial matter, *Gibbs* is not clearly established Federal law for purposes of federal *habeas* review since it is not a decision of the Supreme Court. *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (noting that clearly established Federal law is that determined by the United States Supreme Court); *see also Fischetti*, 384 F.3d at 149 (warning that "cases not decided by the Supreme Court did not serve as a legal benchmark against which to compare the state decision."); *Taylor*, 529 U.S. at 381 (holding that "[i]f [the Supreme] Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar."). While federal *habeas*

courts are not precluded from considering the decisions of the lower federal courts when evaluating whether the state court's application of Supreme Court precedent was reasonable, "federal courts may not grant habeas corpus relief based on the state court's failure to adhere to the precedent of a lower federal court on an issue that the Supreme Court has not addressed." *Matteo*, 171 F.3d 890.

In any event, contrary to Petitioner's assertion, *Gibbs* does not involve "circumstances precisely mirroring those in Petitioner's trial." In *Gibbs*, the defendant asserted a diminished-capacity defense in his first trial. *Id*. at 271. As a result, the defendant was ordered to submit to an interview by a state doctor. *Id*. The prosecution was then permitted to offer the expert testimony of its own doctor who had examined the defendant to rebut the defendant's defense. *Id*. At the second trial, the defendant withdrew his mental-capacity defense, but the trial court permitted the prosecution to introduce the testimony of its own doctor *in its case-in-chief*, simply to repeat incriminating statements the defendant had made to him. *Id*. at 275. Reversing the district court's denial of the defendant's petition for *habeas corpus*, the Third Circuit held that because the interview was mandated by the state court and because the statement was not simply offered at the second trial in rebuttal, a Fifth Amendment violation occurred. *Id*. Central to the Third Circuit's decision, however, was the fact that the prosecution was permitted to introduce the evidence in *its case-in-chief*, and was not limited to rebuttal. *Id*. at 275. In that regard, the Third Circuit noted:

> the statement was not offered at the second trial after the defense put psychiatry in issue, and it was not limited to rebuttal. In fact, the purpose for which it was offered at Gibb's trial was not even to prove a psychological point, since the second trial presented no psychological issue before [the state doctor] testified. The statement was offered simply for the truth of the admissions of fact.

*Id*. at 275.

Once again, Petitioner's reliance on *Gibbs* is misplaced since it involved materially distinguishable facts and did not address the precise issue raised here. Unlike in *Gibbs*, none of the evidence subject to Petitioner's underlying claim was ever introduced *for any purpose* at his second trial. Further, though the trial judge determined that the challenged evidence could be introduced at Petitioner's second trial, it limited any potential use of the evidence to impeachment and specifically ruled that the evidence could not be introduced in the prosecution's case-in-chief. As such, this decision is not applicable here.

Simply put, none of the Supreme Court decisions on which Petitioner relies stands for the proposition that a prosecutor is precluded by the Fifth Amendment or any other constitutional protection from using voluntary statements made by a defendant to his own psychiatrist and/or a state's psychiatrist prior to a first trial in which the defendant pursued a mental health defense *to impeach* a defendant in a second trial in which the defendant does not assert a mental-health defense but takes the stand in his own defense. Absent controlling Supreme Court precedent on this issue, it necessarily follows that the Pennsylvania Supreme Court's decision rejecting Petitioner's claim cannot be either "contrary to, or . . . an unreasonable application of clearly established Federal law . . . by the Supreme Court." 28 U.S.C. § 2254(d)(1); *see also Musladin*, 549 U.S. at 76-77 (holding that the state could not have unreasonably applied clearly established Federal law where the issue presented involved an "open question" in Supreme Court jurisprudence). In the absence of "clearly established [f]ederal law as determined by the Supreme Court," there can be no basis for overturning the state courts' adjudication of this claim. Accordingly, the Magistrate Judge's conclusion that Petitioner's *habeas* petition lacked merit is correct. Therefore, Petitioner's objections are overruled, and the *habeas* petition is denied.

As a final point, this Court notes that Petitioner's trial counsel correctly and candidly recognized the absence of governing case law supporting Petitioner's underlying arguments when he argued the motion *in limine* at issue. Specifically, during the oral argument, Petitioner's counsel acknowledged the absence of any case law supporting his argument and that he had an "uphill battle" on the issue. [*See* ECF 12-4 at pp. 8].

3. Petitioner's petition for a writ of *habeas corpus*, [ECF 1], is **DENIED**; and

4. No probable cause exists to issue a certificate of appealability.[2]

The Clerk of Court is directed to mark this matter **CLOSED**.

**BY THE COURT:**

/s/ *Nitza I. Quiñones Alejandro*
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

---

**Attorney Winters**: And I'm asking in the Motion *in Limine* that the Commonwealth not be allowed to cross-examine my client in the event he testifies as to anything he said to his psychiatrist or to Dr. Michaels; my theory being that if this were the first trial around and I were representing Mr. Rosen, they would not have that information. One, he would not be talking to Dr. Michaels, their witness and, two, they would not have been provided with the reports of his psychiatry; and, therefore, that's information they would not have known and could not have used in the trial. I acknowledge I have an uphill battle on that because obviously my client –

**The Court**: What you're suggesting is that a waiver at one level cannot be used if the defense in a second trial, if it's inconsistent – if the defense is not the same?

**Attorney Winters**: That's what I'm arguing, Judge. And I'll be the first to admit because you know I've never lied to this Court or any Court, I've researched the issue and it's a unique issue, and I haven't found any law that I can stand here and say supports my position. I certainly have to acknowledge that my client, through his first attorney, did waive his privilege with his psychiatrist.

[*Id.* at pp. 8-9].

[2] A district court may issue a certificate of appealability only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). A petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Lambert v. Blackwell*, 387 F.3d 210, 230 (3d Cir. 2004). For the reasons set forth, this Court concludes that no probable cause exists to issue such a certificate in this action because Petitioner has not made a substantial showing of the denial of any constitutional right. Petitioner has not demonstrated that reasonable jurists would find this Court's assessment "debatable or wrong." *Slack,* 529 U.S. at 484. Accordingly, there is no basis for the issuance of a certificate of appealability.